SCRIBNER GRAIN & LUMBER CO., A NEBRASKA
CORPORATION, APPELLEE, V. GERALD D. WORTMAN,
APPELLANT.

281 N. W. 2d 394

Filed July 17, 1979.   No. 42156.

McGrath, North, O'Malley, Kratz, Dwyer, O'Leary and Martin, P.C., for appellant.

Robert M. Hillis of Yost, Schafersman, Yost, Lamme & Hillis, for appellee.

Heard before KRIVOSHA, C. J., WHITE, and HASTINGS, JJ., and REIMER and HIPPE, District Judges.

REIMER, District Judge.

This is an action in equity brought before the District Court for Cuming County, Nebraska, by Scribner Grain & Lumber Co., a Nebraska corporation, against Gerald D. Wortman, the principal stockholder and managing officer of a closed corporation, seeking to enforce the debt of the corporation against the individual stockholder and managing officer, Gerald D. Wortman. From a judgment in favor of the plaintiff, the defendant, Gerald D. Wortman, has appealed. We affirm.

The facts briefly stated are that Gerald D. Wortman had operated a commercial feedlot in Cuming County, Nebraska, for several years prior to 1974, known as Sandhill Feedlots. During 1973 the defendant, Gerald D. Wortman, formed a corporation under the name of Sandhill Feedlots, Inc., and there

appears to be no question that the same was duly incorporated as by law provided. Beginning on January 1, 1974, the property of the former feedlot, operated as a sole proprietorship, was transferred to the corporation and stock issued. The business of the corporation was financed by the Production Credit Association office at Tekamah, Nebraska, and a statement of these transactions are in the record. The plaintiff continued to do business with the new corporation in the same manner as it had before, periodically delivering feed to the feedlot and billing for the balance at the end of each month. During 1974 the plaintiff was paid in February, March, twice in April, again in May, July, August, and September, for the deliveries made during those months, by drafts drawn by the corporation, Sandhill Feedlots, Inc., upon the Production Credit Association. The payment by draft received by the plaintiff on August 17, 1974, was in the amount of $10,861.45 and was $2,500 in excess of the amount billed by plaintiff. The defendant, Gerald D. Wortman, requested a check from plaintiff repaying to him, individually, the amount of the excess and it was given him. Again in September a draft was delivered for $15,656.22, which was $4,000 in excess of the billing. And again, Wortman requested and was given a check on the plaintiff for the amount of the excess. The October 1974 billing was never paid and the plaintiff thereafter brought suit against Sandhill Feedlots, Inc., and recovered judgment in the sum of $13,022.89 on July 3, 1975, in the District Court for Cuming County, Nebraska. It is this judgment which is the subject of the present litigation. After execution had issued against the corporation and was returned unsatisfied, because all the assets of the corporation had been depleted, this action was brought against the principal shareholder and managing officer of the corporation, Gerald D. Wortman, alleging that said stockholder had appropri-

iated and used corporate funds and property for his personal purposes and thereby defrauded and caused damage to the plaintiff as a creditor of the corporation. The court was asked to render judgment against the defendant individually for the corporate debt.

The evidence shows that the defendant, Gerald D. Wortman, readily admits that the two items above referenced were used for his personal interest along with a check drawn on Sandhill Feedlots, Inc., for $2,000, dated June 7, 1974, payable to Ruth A. Shurter, and another check drawn on Sandhill Feedlots, Inc., for $2,250, dated February 14, 1974, payable to A. Gargiulo and Jannuzzi, and another check drawn on Sandhill Feedlots, Inc., for $1,780, dated January 22, 1974, payable to Pfizer Travel Headquarters. The total of these funds admittedly diverted from the corporation by defendant Wortman is in the amount of $12,530. Defendant Wortman argues that these are insignificant amounts when compared to the volume of business done by the corporation.

" 'If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of a legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.' " Massachusetts Bonding & Ins. Co. v. Master Laboratories, 143 Neb. 617, 10 N. W. 2d 501.

A closer look at the testimony of defendant Wortman reveals that through the corporation he was operating a commercial feedlot where the cattle of customers were fed to market weight, then sold to slaughter. He testified that the yard had a 5,000 head capacity and it usually sold about 1,000 head per month; that in 1974 the yard sold 10,000 to 11,000

head and of that number some 4,000 head were owned by the defendant individually; that he paid the same for the care of his cattle as other customers paid, six or seven cents a day.

A further analysis of this testimony is in order. This testimony would indicate that cattle were in the feeding process at the yards for a 5-month or approximately 150-day feeding. If the price paid by Mr. Wortman for feeding his cattle was seven cents per day for 150 days, he was getting his cattle fed to market weight for about $10.50 per head. From other records in the evidence it is apparent that some of the corn purchased by the feedlot corporation was at $2.50 per bushel and that some of the hay was bought at $38 per ton. It is beyond the belief of this court that an estimated 700-pound feeder animal can be fed 150 days to an estimated market weight of 1,100 pounds on 2 bushels of corn and 300 pounds of hay. A general review of the books and records of the corporation, volunteered into the record by the defendant Wortman, would indicate that the actual cost of feeding an animal would be in the area of 75 to 80 cents per day. It is therefore apparent, in addition to actually removing for his own use some $12,530 or more in cash, the defendant transferred substantial benefit to himself by charging only a token figure for the feeding of his personally owned cattle.

"While the general rule is that a corporation will be looked upon as a separate legal entity until sufficient reason to the contrary appears, there is sufficient evidence in the record here to pierce the corporate shell and dissipate the separate legal identities. In such cases the law has no compunction in holding a corporation liable for the acts of its owner or visa versa." Hayes v. Sanitary Improvement Dist. No. 194, 196 Neb. 653, 244 N. W. 2d 505.

The defendant Wortman alleged in his answer and later testified that Dennis Baumert, the managing

officer of the plaintiff, conspired with him to make the overpayment amounts of $2,500 and $4,000 available to him personally. Dennis Baumert testified and denied any guilty knowledge. The presiding judge of the District Court heard the testimony of both witnesses and accepted the version given by Baumert. This court will not interfere.

The judgment of the District Court is affirmed.

AFFIRMED.

KRIVOSHA, C. J. and WHITE, J., concur in the result.